Blake Horwitz, Esq.
*Pro Hac Vice*
The Blake Horwitz Law Firm, LTD.
111 W. Washington St., Ste. 1611
Chicago, Illinois 60605
(312) 676-2100
bhorwitz@bhlfattorneys.com

J.  Michael Sean Onderick, Esq.
The Law Firm of J. Hector Moreno, Jr. & Associates
1800 Hamilton Avenue, Suite 100
San Jose, CA 95125
(408) 440-2575
sean@jhmlaw.com

Attorneys for Plaintiff, SHANE D. MILLER

UNITED STATE DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHANE D. MILLER,<br><br>    Plaintiff,<br><br>vs.<br><br>COUNTY OF SANTA CLARA; SANTA CLARA COUNTY SHERIFF'S OFFICE; SANTA CLARA COUNTY JAIL; SANTA CLARA VALLEY MEDICAL CENTER; DR. ALEXANDER CHYORNY in his individual and official capacity as Adult Custody Health Services Physician; SANTA CLARA COUNTY COUNSEL CHERYL A. STEVENS in her individual and official capacity as county counsel; SHERIFF LAURIE SMITH in her individual and official capacity of Sheriff of the County of Santa Clara; SERGEANTS MATTHEW TRACY, J. JENSEN, DURAN, PADGETT and BRACKETT, in their individual and official capacity of jail personnel at the Santa Clara County Jail; DEPUTY/OFFICERS  J. SMITH, LOZANO, NGUYEN, SANTOS, PHILLIP, J. CHACON, TEJADA, ANTHONY DIAZ, T. GONZALES, EUGENE TOBOLA, VASQUEZ, TEMPRA, PEARCE, CHETCUTI, FLORES, REYES, GRANT, CORTES, NEEDHAN, VALLEJO, DIAS, and MADRIZ in their individual and official capacity of jail personnel at the Santa Clara County Jail; and DOES 1-100, INCLUSIVE,<br><br>    Defendants. | CASE NO:  15-cv-03113-HRL<br><br>**SECOND AMENDED COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL**<br><br>Complaint Filed: July 6, 2015<br>Honorable Edward Davila |

1

## JURISDICTION AND VENUE

1.      This action seeks monetary damages and injunctive relief for violations of the civil rights, privileges and immunities guaranteed under the Sixth, Eighth and Fourteenth Amendments to the Constitution of the United States of America and 42 U.S.C. §1983 and 1988.

2.      In addition, PLAINTIFFS bring this action under the Americans with Disability Act, 42 U. S. C. §12101, *et seq.* ("ADA"), Section 504 of the Rehabilitation Act of 1973, as amended, at 29 U.S.C. §794 and the Unruh Civil Rights Act, Cal. Civ. Code §§51, *et seq.* and 52, *et seq.*

3.      Jurisdiction is founded on 28 U.S.C. §§1331 and 1343(1), (2), (3), (4) and the aforementioned statutory and constitutional provisions. PLAINTIFFS further invoke the pendent jurisdiction of this Court to consider claims arising under state law under 28 U.S.C. §1367.

4.      Venue is proper under 28 U.S.C. §1391(b) because the event giving rise to this Complaint occurred in this district.

## PARTIES

5.      SHANE MILLER (also referred to herein as "Shane") suffers from a profound medical condition making his arms and legs paralyzed rendering him unable to bring this action on his own behalf.

6.      SHANE is a citizen of the United States of America and a citizen of the State of California.

7.      Defendant COUNTY OF SANTA CLARA is a municipal corporation and a governmental entity.

8.      Defendant SANTA CLARA COUNTY SHERIFF'S DEPARTMENT is a municipal corporation and a governmental entity

2

9.   Defendant SANTA CLARA VALLEY MEDICAL CENTER (SCVMC) is owned and operated by the County of Santa Clara.

10.   SCVMC is a 574-bed tertiary medical center.

11.   SCVMC through the staff that works at said center, provides medical care and treatment for inmates housed at the Santa Clara County Jail.

12.   The SANTA CLARA COUNTY SHERIFF'S OFFICE (SCCSO) is a governmental entity and supplies the Santa Clara County Jail, *inter alia*, with correctional officers who work at said jail.

13.   Defendant SHERIFF LAURIE SMITH is and was at all times relevant to this Complaint the acting Sheriff of Santa Clara County, California.

14.   SHERIFF LAURIE SMITH at all relevant was the commanding officer and supervised/controlled and/or regulated the training, supervision and conduct of the officers of SCCSO.

15.   SHERIFF LAURIE SMITH is sued in her official capacity.

16.   The SCCSO during the times alleged in this complaint provided law enforcement officers for the SANTA CLARA COUNTY JAIL.

17.   DEFENDANT SGT. MATTHEW TRACY is sued in his individual capacity and was, during all times alleged in this complaint, a correctional officer at the Santa Clara County Jail.

18.   DEFENDANT SGT. MATTHEW TRACY is sued in his individual capacity and was, during all times alleged in this complaint, acting with the course and scope of his duties as an officer for SCCSO.

19.   DEFENDANT SGT. J. JENSEN was, during all times alleged in this complaint, a correctional officer at the Santa Clara County Jail.

20.   DEFENDANT SGT. SGT. J. JENSEN is sued in his individual capacity and was, during all times alleged in this complaint, acting with the course and scope of his duties as an officer for SCCSO.

3

21. DEFENDANT SGT. DURAN was, during all times alleged in this complaint, a correctional officer at the Santa Clara County Jail.

22. DEFENDANT SGT. DURAN is sued in his individual capacity and was, during all times alleged in this complaint, acting with the course and scope of his duties as an officer for SCCSO.

23. DEFENDANT SGT. PADGETT was, during all times alleged in this complaint, a correctional officer at the Santa Clara County Jail.

24. DEFENDANT SGT. PADGETT is sued in his individual capacity and was, during all times alleged in this complaint, acting with the course and scope of his duties as an officer for SCCSO.

25. DEFENDANT SGT. BRACKETT was, during all times alleged in this complaint, a correctional officer at the Santa Clara County Jail.

26. DEFENDANT SGT. BRACKETT is sued in his individual capacity and was, during all times alleged in this complaint, acting with the course and scope of his duties as an officer for SCCSO.

27. DEFENDANT DEPUTY OFFICER J. SMITH was, during all times alleged in this complaint, a correctional officer at the Santa Clara County Jail.

28. DEFENDANT DEPUTY/OFFICER J. SMITH is sued in his individual capacity and was, during all times alleged in this complaint, acting with the course and scope of his duties as an officer for SCCSO.

29. DEFENDANT DEPUTY OFFICER LOZANO was, during all times alleged in this complaint, a correctional officer at the Santa Clara County Jail.

30. DEFENDANT DEPUTY/OFFICER LOZANO is sued in his individual capacity and was, during all times alleged in this complaint, acting with the course and scope of his duties as an officer for SCCSO.

31. DEFENDANT DEPUTY OFFICER NGUYEN was, during all times alleged in this complaint, a correctional officer at the Santa Clara County Jail.

4

32.     DEFENDANT DEPUTY/OFFICER NGUYEN is sued in his individual capacity and was, during all times alleged in this complaint, acting with the course and scope of his duties as an officer for SCCSO.

33.     DEFENDANT DEPUTY OFFICER SANTOS was, during all times alleged in this complaint, a correctional officer at the Santa Clara County Jail.

34.     DEFENDANT DEPUTY/OFFICER SANTOS is sued in his individual capacity and was, during all times alleged in this complaint, acting with the course and scope of his duties as an officer for SCCSO.

35.     DEFENDANT DEPUTY OFFICER PHILLIP was, during all times alleged in this complaint, a correctional officer at the Santa Clara County Jail.

36.     DEFENDANT DEPUTY/OFFICER PHILLIP is sued in his individual capacity and was, during all times alleged in this complaint, acting with the course and scope of his duties as an officer for SCCSO.

37.     DEFENDANT DEPUTY OFFICER FERNANDES was, during all times alleged in this complaint, a correctional officer at the Santa Clara County Jail.

38.     DEFENDANT DEPUTY/OFFICER FERNANDES is sued in his individual capacity and was, during all times alleged in this complaint, acting with the course and scope of his duties as an officer for SCCSO.

39.     DEFENDANT DEPUTY OFFICER J. CHACON was, during all times alleged in this complaint, a correctional officer at the Santa Clara County Jail.

40.     DEFENDANT DEPUTY/OFFICER J. CHACON is sued in his individual capacity and was, during all times alleged in this complaint, acting with the course and scope of his duties as an officer for SCCSO.

41.     DEFENDANT DEPUTY OFFICER TEJEDA was, during all times alleged in this complaint, a correctional officer at the Santa Clara County Jail.

42.    DEFENDANT DEPUTY/OFFICER TEJEDA is sued in his individual capacity and was, during all times alleged in this complaint, acting with the course and scope of his duties as an officer for SCCSO.

43.    DEFENDANT DEPUTY OFFICER ANTHONY DIAZ was, during all times alleged in this complaint, a correctional officer at the Santa Clara County Jail.

44.    DEFENDANT DEPUTY/OFFICER ANTHONY DIAZ is sued in his individual capacity and was, during all times alleged in this complaint, acting with the course and scope of his duties as an officer for SCCSO.

45.    DEFENDANT DEPUTY OFFICER T. GONZALES was, during all times alleged in this complaint, a correctional officer at the Santa Clara County Jail.

46.    DEFENDANT DEPUTY/OFFICER T. GONZALES is sued in his individual capacity and was, during all times alleged in this complaint, acting with the course and scope of his duties as an officer for SCCSO.

47.    DEFENDANT DEPUTY OFFICER EUGENE TOBOLA was, during all times alleged in this complaint, a correctional officer at the Santa Clara County Jail.

48.    DEFENDANT DEPUTY/OFFICER EUGENE TOBOLA is sued in his individual capacity and was, during all times alleged in this complaint, acting with the course and scope of his duties as an officer for SCCSO.

49.    DEFENDANT DEPUTY OFFICER VASQUEZ was, during all times alleged in this complaint, a correctional officer at the Santa Clara County Jail.

50.    DEFENDANT DEPUTY/OFFICER VASQUEZ is sued in his individual capacity and was, during all times alleged in this complaint, acting with the course and scope of his duties as an officer for SCCSO.

51.    DEFENDANT DEPUTY OFFICER TEMPRA was, during all times alleged in this complaint, a correctional officer at the Santa Clara County Jail.

52.   DEFENDANT DEPUTY/OFFICER TEMPRA is sued in his individual capacity and was, during all times alleged in this complaint, acting with the course and scope of his duties as an officer for SCCSO.

53.   DEFENDANT DEPUTY OFFICER PEARCE was, during all times alleged in this complaint, a correctional officer at the Santa Clara County Jail.

54.   DEFENDANT DEPUTY/OFFICER PEARCE is sued in his individual capacity and was, during all times alleged in this complaint, acting with the course and scope of his duties as an officer for SCCSO.

55.   DEFENDANT DEPUTY OFFICER CHETCUTI was, during all times alleged in this complaint, a correctional officer at the Santa Clara County Jail.

56.   DEFENDANT DEPUTY/OFFICER CHETCUTI is sued in his individual capacity and was, during all times alleged in this complaint, acting with the course and scope of his duties as an officer for SCCSO.

57.   DEFENDANT DEPUTY OFFICER DIAS was, during all times alleged in this complaint, a correctional officer at the Santa Clara County Jail.

58.   DEFENDANT DEPUTY/OFFICER DIAS is sued in his individual capacity and was, during all times alleged in this complaint, acting with the course and scope of his duties as an officer for SCCSO.

59.   DEFENDANT DEPUTY OFFICER MADRIZ was, during all times alleged in this complaint, a correctional officer at the Santa Clara County Jail.

60.   DEFENDANT DEPUTY/OFFICER MADRIZ is sued in his individual capacity and was, during all times alleged in this complaint, acting with the course and scope of his duties as an officer for SCCSO.

61.   DEFENDANT DEPUTY OFFICER CORTES was, during all times alleged in this complaint, a correctional officer at the Santa Clara County Jail.

62. DEFENDANT DEPUTY/OFFICER CORTES is sued in his individual capacity and was, during all times alleged in this complaint, acting with the course and scope of his duties as an officer for SCCSO.

63. DEFENDANT DEPUTY OFFICER NEEDHAN was, during all times alleged in this complaint, a correctional officer at the Santa Clara County Jail.

64. DEFENDANT DEPUTY/OFFICER NEEDHAM is sued in his individual capacity and was, during all times alleged in this complaint, acting with the course and scope of his duties as an officer for SCCSO.

65. DEFENDANT DEPUTY OFFICER REYES was, during all times alleged in this complaint, a correctional officer at the Santa Clara County Jail.

66. DEFENDANT DEPUTY/OFFICER REYES is sued in his individual capacity and was, during all times alleged in this complaint, acting with the course and scope of his duties as an officer for SCCSO.

67. DEFENDANT DEPUTY OFFICER GRANT was, during all times alleged in this complaint, a correctional officer at the Santa Clara County Jail.

68. DEFENDANT DEPUTY/OFFICER GRANT is sued in his individual capacity and was, during all times alleged in this complaint, acting with the course and scope of his duties as an officer for SCCSO.

69. DEFENDANT DEPUTY OFFICER FLORES was, during all times alleged in this complaint, a correctional officer at the Santa Clara County Jail.

70. DEFENDANT DEPUTY/OFFICER FLORES is sued in his individual capacity and was, during all times alleged in this complaint, acting with the course and scope of his duties as an officer for SCCSO.

71. DEFENDANT DEPUTY OFFICER VALLEJO was, during all times alleged in this complaint, a correctional officer at the Santa Clara County Jail.

8

72.    DEFENDANT DEPUTY/OFFICER VALLEJO is sued in his individual capacity and was, during all times alleged in this complaint, acting with the course and scope of his duties as an officer for SCCSO.

73.    All of the DEFENDANT OFFICERS alleged herein were at all times relevant hereto acting under color of law and pursuant to the rule and regulations of the County of Santa Clara, SCCSO and the State of California.

74.    The SCCSO oversees the jail system for the Santa Clara County Jail.

75.    SHERIFF LAURIE SMITH is responsible for the safety and security of inmates who are in custody at the Santa Clara County Jail.

76.    Defendant DR. ALEXANDERANDER CHYORNY at all times relevant to this Complaint was a physician providing medical services to prisoners of the Santa Clara County Jail

77.    Defendant COUNTY COUNSEL CHERYL A. STEVENS is and was at all times relevant to this Complaint a county counsel of Santa Clara County, California.

78.    At all times relevant hereto and in all their actions described herein, all of the Defendants were acting under color of law and pursuant to their respective authorities as sheriff, county counsel, deputies, correctional officers and jail medical personnel.

### *Monell* **Claim**

79.    A pattern of lawlessness has been occurring at Santa Clara County Jail.

80.    The moving force behind this pattern is the custom and practice undertaken by the SANTA CLARA COUNTY SHERIFF'S DEPARTMENT, by and through its correctional officers.

81.    THE SANTA CLARA COUNTY SHERIFF, including SHERIFF LAURIE SMITH has allowed the lawlessness to continue for significant periods of

9

time and for a minimum, five years prior to the incarceration of SHANE and up the present.

82. THE SANTA CLARA COUNTY SHERIFF, including SHERIFF LAURIE SMITH has acted with deliberate indifference to the rights of inmates in the jail by allowing lawlessness to occur.

83. Examples of lawlessness which occurred in the jail, which are the moving force behind the injuries that have been caused to SHANE MILLER amount to the following:

- falsification of reports regarding inmate conduct and the care and treatment of inmates;

- officers failing to report the misconduct of fellow officers;

- officer using excessive force onto inmates;
- officers failing to report acts of excessive force onto other inmates where they have witnessed same;

- officers failing to report the falsification of reports;

- upon information and belief, hundreds of inmates living in inhumane, unsanitary isolation cells;

- racists communications among correctional officers, referring to inmates as niggers and kikes;

- three correctional officers (Matthew Farris, Jereh Lubrin and Rafael Rodriguez) causing the murder of at least one inmate, Michael Tyree;

- referring to African American inmates as niggers that could be hung or individuals that could be killed;

.

- text messages between the correctional officers: "Think of all the lamp shades we can make from that kike's hide. I mean there is always a bright side to everything."

- the beating of Reuben Garcia by Officers Phillip Abecendario and Tuan Le;

- all the acts of misconduct perpetrated against SHANE MILLER as alleged in this complaint (paragraphs 85 through 212).

10

84.    The aforementioned acts have been going on for extended periods of time, during SHANE's incarceration and beforehand, so much so that SHERIFF LAURIE SMITH and the COUNTY OF SANTA CLARA have acted with deliberate indifference by failing to intervene in this conduct, sticking their head in the sand and allowing the conduct to occur and failing to re-train, terminate staff members so that they cease from engaging in this activity.

## Underlying Facts of the Instant Claim

85.    The following series of allegations can not encompass all that SHANE D. MILLER ("SHANE") experienced in jail, nor attribute all the acts of misconduct towards each individual officer.  As discovery unfolds, this complaint will need to be amended.  Further, the acts of misconduct as alleged herein are not meant to be exhaustive but serve to put Defendants on notice of a long standing and continual series of injuries perpetrated against SHANE.

86.    SHANE has a serious neurological disorder commonly referred to as epilepsy.

87.    SHANE was diagnosed with epilepsy by neurologist Dr. Lawrence Grace of St. Johns Hospital in Oxnard, California on February 13, 1978

88.    SHANE has been an inmate at Santa Clara County Jail since September 22, 2013.

89.    On March 26, 2014 while incarcerated in Santa Clara County Jail, SHANE suffered from a seizure. He awakened to find himself on the floor of his cell with two contusions to his head and an injury to his forearm.

90.    On March 28, 2014, SHANE was transported to Santa Clara Valley Medical Center.

91.    At that time, SHANE, presented, *inter alia*, lacking sensation to pain to his left extremity.

92.    At that time, a CT scan of SHANE's head revealed a moderate sized right parietal subgaleal hematoma and midoccipital subgaleal hematoma.

93.    Afterwards, SHANE returned to Santa Clara County Jail where he continued to suffer the effects of the seizure, including dizziness, nausea, headaches, back pain and numbness to his lower extremity(ies).

94.    SHANE' s condition rendered him unable to lift himself from the floor to the toilet so he could not use the toilet and was forced to foul himself and then lay in his own waste.

95.    On multiple occasions in 2014, SHANE required the use of a diaper. Instead of providing a diaper, SHANE was caused to urinate and defecate on himself and lay in his own feces and urine.

96.    DR. ALEXANDER CHYORNY, who provided medical care to SHANE, directed officers at the jail to provide a specific pain regimen to SHANE in order to cause him to walk or stand.

97.    On multiple occasions DR. CHYORNY provided a written order to the correctional officers to use pain compliance techniques when interacting with SHANE.

98.    Shortly thereafter, many officers used, on multiple occasions *(see infra.)* pepper spray, painful cell extraction techniques and painful pressure techniques onto the body to cause SHANE significant pain and injury.

99.    DR. CHYORNY'S order to use pain compliance techniques was a proximate cause to multiple injuries sustained by SHANE.

100.  DR. CHYORNY was in a position of power and authority over SHANE.

101. DR. CHYORNY and the officers referenced *infra* were acting jointly and in agreement with each other such that DR. CHYORNY'S actions and that of the officers are joint action as governmental actors depriving SHANE the right to be free from unreasonable force.

102. During the time that SHANE has been in custody, his medical condition has worsened to the extent that he has lost over 110 pounds.

103. While in custody, SHANE has been unable to stand.

104. As of the time of this filing, SHANE is in custody.

**April 1, 2014 Pepper Spray Incident**

105. On April 1, 2014 SHANE continued to suffer from weakness in his lower extremities such that he was unable to stand or walk.

106. On April 1, 2014, SCCSO correctional OFFICERS J. SMITH, NGUYEN, and LOZANO intended to move SHANE out of the 8A housing unit.

107. DEFENDANT OFFICERS directed SHANE to stand up and dress himself.

108. SHANE, physically unable to stand, was unable to comply with DEFENDANT OFFICERS directive.

109. DEFENDANT SERGEANTS BRACKETT, TRACY, AND PADGETT, then approached SHANE, while SHANE remained on his cell room floor.

110. DEFENDANT SERGEANTS directed SHANE to stand up and dress himself.

111. As a result of SHANE'S "refusing to follow directives," SGT. BRACKETT then pepper sprayed SCCSO issued chemical agent on or about SHANE'S face.

112. Still unable to stand, and suffering from the effects of the chemical agent, SHANE then defecated on his jail cell floor.

13

113.  OFFICER J. SMITH then took control of SHANE'S right arm.

114.  OFFICERS SANTOS and LOZANO then applied handcuffs to SHANE.

115.  SGT. BRACKETT then requested a restraint chair.

116.  OFFICERS NGUYEN, LOZANO, PHILLIP and SANTOS lifted SHANE off his jail room floor and placed SHANE in the restraint chair.

117.  OFFICER LOZANO then applied the left foot shackle and left shoulder restraint belt to SHANE.

118.  OFFICERS FERNANDES and OFFICER J. SMITH then wheeled SHANE to the "Sun Deck" where he was decontaminated with water.

119.  SGTS. TRACY and PADGETT, OFFICERS J. SMITH, NGUYEN, J. SMITH, SANTOS, LOZANO, and PHILLIP witnessed the above referenced pepper spray and failed to intervene in its use though they had the ability to do so.

120.  At no time on this date did SHANE batter or strike an officer.

121.  At no time did SHANE use physical force against an officer on this date.

122.  At no time did any officer on this date witness SHANE use physical force against an officer.

123.  The pepper spray was used in a confined area (SHANE's cell), forcing one correctional officer, OFFICER NGYUEN, to leave the cell to regain his breath.

124.  The pepper spray caused SHANE significant difficulty breathing.

125.  The pepper spray was allowed to stay in SHANE'S eyes for over an hour, causing damage to SHANE'S eyes.

126.  This use of force was excessive and unreasonable.

14

**June 26, 2014 Pain Compliance Techniques**

127.  On June 26, 2014, SHANE continued to suffer from weakness in his lower extremities such that he was unable to stand, walk or even raise himself onto the toilet.

128.  On that date, DEFENDANT OFFICERS PEARCE, CHETCUTI, DIAS and MADRIZ ordered SHANE to stand, to get up and gather his belongings so he could be moved to another cell.

129.  SHANE was unable to stand.

130.  When SHANE failed to rise, Officers PEARCE and DIAS applied twist locks on his hands and arms and raised him up and into a wheelchair, causing SHANE to scream in pain.

131.  SHANE was unable to raise himself under his own power during the twist lock.

132.  PEARCE'S and DIAS' actions caused SHANE significant pain.  Their use of force was excessive under the circumstances.  OFFICERS CHETCUTI and MADRIZ were in close proximity to intervene/intercede in the conduct of PEARCE and DIAS and did not do so even though they had the ability to do so.

133.  SHANE was subsequently taken to a new cell in a wheelchair by OFFICERS PEARCE, CHETCUTI, DIAS and MADRIZ. Although restrained with waist chains and leg shackles, SHANE was again ordered to stand and walk.

134.  When SHANE failed to stand PEARCE, CHETCUTI, DIAS and MADRIZ lifted SHANE by his chained arms and placed him face down on the floor of his cell. This conduct constituted excessive force.

135.  Because SHANE could not walk and Santa Clara County Jail personnel refused to provide a wheelchair to transport him for meetings with counsel, SHANE was prevented from access to his own counsel.

136.  Because SHANE could not walk and Santa Clara County Jail personnel refused to provide a wheelchair to transport him, SHANE was not transported to many of his court hearings.

137.  SHANE made many requests that his medical condition be accommodated through the provision of a wheelchair, diapers and other appropriate medical intervention so that he could see his own counsel.

138.  SHANE'S counsel, J. Hector Moreno, Jr. and Sean Onderick made formal written requests and offered to provide a wheelchair or, alternately, meet with SHANE in his cell to accommodate SHANE'S medical condition.

139.  Santa Clara County Jail personnel continued to disregard SHANE'S requests for accommodation, denying him access to a wheelchair or to meet with counsel in his cell - effectively denying him access to counsel.

140.  At no time on this date did SHANE batter or strike an officer.

141.  At no time did SHANE use physical force against an officer on this date.

142.  At no time did any officer on this date witness SHANE use physical force against an officer.

### July 17, 2014
### Pepper Spray Incident

143.  On the afternoon of July 17, 2014, SHANE'S counsel sent a letter via email transmission to Santa Clara County Counsel CHERYL A. STEVENS requesting that SHANE be provided with wheelchair assistance to access counsel and attend hearings for the defense of a criminal action lodged against SHANE.

144.  Within two hours, SHANE was restrained and pepper sprayed for "failing to obey" CHACON'S order to stand with his hands behind his back. SHANE was unable to stand.

16

145. OFFICER CHACON sprayed pepper spray twice directly into the face of SHANE.

146. The pepper spray was used in a confined area (SHANE'S cell)

147. The pepper spray caused SHANE significant difficulty breathing.

148. The pepper spray was allowed to stay in Shane's eyes for over an hour, causing damage to Shane's eyes.

149. This use of force was excessive and unreasonable.

150. The use of force deprived SHANE of the right to see his counsel.

151. SHANE was not brought to see his lawyer, causing a delay in the criminal case and fear of torture to be instilled into SHANE's psyche.

152. Subsequently, SHANE was handcuffed with his hands behind his back connected to chains securing his feet and placed on a restraint chair by his arms lifted high behind his back. SHANE was subsequently taken to another room and doused with water.

153. SGT. DURAN, VASQUEZ, and TEMPRA witnessed the above referenced pepper spray and failed to intervene in its use though they had the ability to do so.

154. At no time on this date did SHANE batter or strike an officer.

155. At no time did SHANE use physical force against an officer on this date.

156. At no time did any officer on this date witness SHANE use physical force against an officer.

157. Within five hours prior to the pepper spray incident referenced above, SHANE defecated on himself in the same cell he occupied.

**July 24, 2014**
**Pain Compliance Techniques**

158.  On July 24, 2014, OFFICERS VASQUEZ, GRANT, REYES, CORTES, FLORES and DURAN utilized arm bars and Yawara sticks onto SHANE'S body.

159.  These officers directly undertook the aforementioned effort and/or failed to intervene in this effort.

160.  A Yawara stick is a Japanese weapon used in martial arts.

161.  The Yawara stick was applied to SHANE'S left and right ankle.

162.  The Yawara stick and arm bar(s) were utilized to cause SHANE to stand.

163.  The Yawara stick was used to press against SHANE'S throat when he yelled in pain.

164.  The Yawara stick was utilized to cause SHANE to experience extreme pain.

165.  Control holds and the application of the Yawara stick onto SHANE'S body was utilized on this date by OFFICERS VASQUEZ and/or GRANT and/or REYES and/or FLORES and/or DURAN and/or CORTES for pain compliance.

166.  As SHANE lay prostrate and naked on the floor of the cell, several guards used their knees to press into SHANE'S spine causing significant injury.

167.  SHANE was unable to stand.

168.  At no time on this date did SHANE batter or strike an officer.

169.  At no time did SHANE use physical force against an officer on this date.

170.  At no time did OFFICERS VASQUEZ, GRANT, REYES, FLORES and DURAN witness SHANE use physical force against these officers on July 24, 2014.

18

171.  SHANE was moved from cell 339 to cell 334.

172.  The use of force onto the body of SHANE on this date was excessive and unnecessary.

### August 14, 2014
### Pain Compliance Techniques

173.  On August 14, 2014, SHANE had a medical appointment.

174.  SHANE was unable to stand

175.  SHANE was ordered to stand by OFFICER DIAZ.

176.  DIAZ was ordered by SGT. JENSEN to cause SHANE to stand, using pain compliance techniques.

177.  DIAZ used pain compliance techniques.

178.  OFFICER GONZALEZ was also present and he used pain compliance techniques against SHANE.

179.  OFFICER TOBOLA used pain compliance techniques.

180.  One of the pain compliance techniques by DIAZ was a rear wrist lock

181.  The rear wristlock was used to cause SHANE to be placed onto a wheel chair.

182.  At no time on this date did SHANE batter or strike an officer on August 14, 2014.

183.  At no time did SHANE use physical force against an officer on this date.

184.  At no time did DIAZ, JENSEN, GONZALEZ or TOBOLA witness SHANE use physical force against these officers on August 14, 2014.

185.  GONZALES, DIAZ, and under the direction of SGT. JENSEN, shackled SHANE'S hands behind his back and lifted him by his arms into a wheelchair.

186.  The use of force onto the body of SHANE on this date was excessive and unnecessary.

**December 30, 2014**
**Obscenity**

187.  On December 30, 2014, OFFICER NEEDHAM came into contact with SHANE.

188.  On that date, he placed his hand(s) on SHANE'S head.

189.  At that time he stated to SHANE "Suck my balls".

190.  At no time on this date did SHANE batter or strike an officer on December 30, 2014.

191.  At no time did SHANE use physical force against an officer on this date.

192.  The use of force onto the body of SHANE on this date was excessive and unnecessary.

**January 3, 2015**
**Kicked in His Lower Back Area**

193.  On January 3, 2015, SHANE was sleeping on the floor of his cell when Officer TEJEDA entered the cell for a "welfare" check.

194.  On said date, Officer TEJEDA kicked SHANE's lower back area.

195.  On said date, Officer TEJEDA used force against SHANE

196.   TEJEDA's use of force on this date caused SHANE'S head to slam against a concrete wall.

197.  Blood was subsequently found in Shane's urine following the incident.

198.  SHANE was not taken for medical treatment in connection with this incident.

199.  At no time did SHANE use physical force against an officer on this date.

20

200. The use of force onto the body of SHANE on this date was excessive and unnecessary.

### September 24, 2015

201. OFFICER RAMON MADRIZ on September 24, 2015 came into contact with SHANE as he was to transport SHANE to his court hearing.

202. MADRIZ picked SHANE up by his neck and chains and dropped SHANE into the wheelchair and onto his neck.

203. It is dangerous to pick up a paralyzed man by his neck.

204. Notwithstanding this danger, MADRIZ picked SHANE up by his neck, which caused serious injury to SHANE.

205. Afterwards, MADRIZ pushed feces into SHANE'S mouth stating words to the effect of "How does that taste, you Kosher Fuck, Michael Tyree is not going to help you. We are going to kill you."

206. At no time did SHANE use physical force against an officer on this date.

207. The use of force onto the body of SHANE on this date was excessive and unnecessary.

208. OFFICER VALLEJO was present when these events took place, was in close enough proximity to intervene in the conduct of OFFICER MADRIZ and failed to do so.

### Miscellaneous Allegations

209. SHANE was repeatedly denied access to counsel from approximately March 2014 to September 2014.

210. SHANE has been locked in isolation cells since March 26, 2014. He has been denied phone access, shower, mail, grievance forms, had his food thrown on the floor, humiliated as he lay in his own excrement for days. He has also been aggressively manhandled, pepper sprayed, physically mistreated throughout the duration of his confinement at the jail.

211.  SHANE has been put in cells where freezing forced air blew directly on him 24/7. SHANE was stripped of his clothing causing his body to contort in pain from the cold. His water was turned off leaving him to drink the remaining water out of the toilet.

212.  PLAINTIFF has complied with the notice requirements of the Tort Claims Act.

**COUNT I**
**(42 U.S.C. 1983)**
**(Violations of the Eighth Amendment**
**to the United States Constitution)**

213.  PLAINTIFF pleads and incorporate the allegations set forth in paragraphs 1-176 of the Complaint as if specifically set forth therein.

214.  The actions of the DEFENDANT OFFICERS MATTHEW TRACY, J. JENSEN, DURAN, J. CHACON, TEJEDA, ANTHONY DIAZ, T. GONZALES, EUGENE TOBOLA, VASQUEZ, TEMPRA, PEARCE, CHETCUTI, DIAS, GRANT, FLORES, CORTES, REYES, NEEDHAM, OFFICER VALLEJO and MADRIZ constituted excessive force absent a rationale governmental purpose.

215.  DEFENDANTS' conduct was the proximate cause to physical pain and suffering.

216.  The DEFENDANTS' failure to intervene in the unnecessary use of force was also a violation of the Eighth Amendment.

217.  DR. CHYORNY conduct as a joint actor also proximately caused proximately caused the injuries referenced in this count.

218.  DEFENDANTS' conduct violated the Eight Amendment to the United State's constitution.

219. WHEREFORE, PLAINTIFF demands compensatory damages, punitive damages, costs and attorney fees against the DEFENDANTS and whatever additional relief this Court deems equitable and just.

## COUNT II
## (Battery)

220. PLAINTIFF pleads and incorporates the allegations set forth in paragraphs 1-176 of the Complaint as if specifically set forth therein.

221. DEFENDANT OFFICERS MATTHEW TRACY, J. JENSEN, DURAN, J. CHACON, TEJEDA, ANTHONY DIAZ, T. GONZALES, EUGENE TOBOLA, VASQUEZ, TEMPRA, PEARCE, CHETCUTI, DIAS, GRANT, FLORES, CORTES, REYES, NEEDHAM, OFFICER VALLEJO and MADRIZ willful and intentional conduct violated the law of the State of California.

222. As a direct result of these DEFENDANTS' conduct as described herein, SHANE sustained actual damages including injuries to his person, pain, severe and grievous mental and emotional suffering, humiliation, shame, embarrassment, worry, fear, anguish, shock, nervousness, and anxiety.

223. DR. CHYORNY conduct as a joint actor also proximately caused proximately caused the injuries referenced in this count and also violated the laws of the State of California.

WHEREFORE, PLAINTIFF demands compensatory and punitive damages and costs from the DEFENDANTS whatever additional relief this Court deems equitable and just.

## COUNT III
### (Negligent Hiring, Retention, Training, and Supervision)
### Against Defendants SANTA CLARA VALLEY MEDICAL CENTER, SANTA CLARA COUNTY SHERIFF'S DEPARTMENT, COUNTY OF SANTA CLARA

224. PLAINTIFF pleads and incorporates each and every allegation in paragraphs 1-176, ignoring references to federal statutes as this is a claim brought pursuant to California State Law.

225. DEFENDANTS COUNTY OF SANTA CLARA, SANTA CLARA COUNTY SHERIFF'S DEPARTMENT, and SANTA CLARA VALLEY MEDICAL CENTER, SANTAL CLARA COUNTY SHERIFF had a duty to SHANE to exercise due care in the hiring, selection, training, supervision, oversight, directing, retaining and controlling employees and agents, including but not limited to, OFFICERS MATTHEW TRACY, J. JENSEN, DURAN, J. CHACON, TEJEDA, ANTHONY DIAZ, T. GONZALES, EUGENE TOBOLA, VASQUEZ, TEMPRA, PEARCE, CHETCUTI, DIAS, GRANT, FLORES, CORTES, REYES, NEEDHAM, OFFICER VALLEJO and MADRIZ pursuant to the California Government Code § 845.6, and § 815.2.

226. The aforementioned DEFENDANTS had a duty to SHANE to properly train, supervise and retain its agents so as to ensure that their employees properly furnished medical care for SHANE when they knew, or had reason to know, that SHANE was in need of immediate medical care and accommodation of his disabling epilepsy and they are also individually responsible pursuant to Government Code §855.8 and § 856.

227. The aforementioned DEFENDANTS had a duty to SHANE to properly train, supervise and retain its agents so as to ensure that SHANE could have access to his counsel.

24

228. The aforementioned DEFENDANTS had a duty to SHANE to properly train, supervise and retain its agents so as to ensure that SHANE would not be exposed to excessive force by correctional officers.

229. Defendants breached their duties to SHANE through their negligent, grossly negligent, reckless and/or intentional conduct in violation of SHANE'S rights, including California Government Code § 845.6 when these DEFENDANTS knew, or had reason to know, that SHANE was in need of immediate medical care, his counsel and the right to be free from excessive use of force and physical abuse.

230. DEFENDANTS acted through their agents, denying SHANE the right to counsel, proper medical care and accommodation and the right to be free from excessive force and physical abuse.

WHEREFORE, PLAINTIFF demands compensatory and punitive damages and costs from the DEFENDANTS whatever additional relief this Court deems equitable and just.

### COUNT IV
**Intentional Conduct**
***Respondeat Superior***

231. DEFENDANTS COUNTY OF SANTA CLARA, SANTA CLARA SHERIFF'S DEPARTMENT and SHERIFF LAURIE SMITH are directly liable and responsible for the acts of the agents and employees as those employees were acting within the scope of their employment and while they were on duty and while they caused injury to SHANE.

232. This count is specifically directed only to the state law claims found within this complaint.

WHEREFORE, PLAINTIFF demands compensatory damages and costs from the DEFENDANTS whatever additional relief this Court deems equitable and just.

### COUNT V
### (42 U.S.C. 1983)
### (Violations of the Sixth and First Amendment
### to the United States Constitution)

233. PLAINTIFF pleads and incorporates the allegations set forth in paragraphs 1-176 of the Complaint as if specifically set forth therein.

234. PLAINTIFF complains of DEFENDANT OFFICERS MATTHEW TRACY, J. JENSEN, DURAN, J. CHACON, TEJEDA, ANTHONY DIAZ, T. GONZALES, EUGENE TOBOLA, VASQUEZ, TEMPRA, PEARCE, CHETCUTI, DIAS, GRANT, FLORES, CORTES, REYES, NEEDHAM and CHERYL A. STEVENS.

235. The actions of these DEFENDANTS in denying SHANE the right to counsel, injuring him while he sought his right to counsel, quelled SHANE'S speech violating the First Amendment to the United States Constitution and prevented him from speaking to his counsel in violation of the Sixth Amendment to the United States Constitution.

236. Preventing SHANE from speaking to counsel caused SHANE fear, emotional pain and suffering as SHANE was aware of his right to counsel and that he was being prevented from speaking to his counsel.

237. From March, 2014 to approximately August, 2014, SHANE was prevented from seeing his counsel on multiple occasions. Attempts were made form SHANE'S attorney by way of communicating to, *inter alia,* CHERYL A. STEVENS

to allow SHANE wheelchair access to his counsel but these attempts went unresolved, so much so that SHANE was prevented from speaking to his counsel.

238. Dr. CHYORNY, through comments that SHANE should be exposed to pain compliance techniques if he does not stand or walk, coupled with the actions of the correctional officers from the SCCSO proximately caused a deprivation of SHANE's right to speak to his counsel.  DR. CHYORNY'S conduct and that of the SCCSO correctional officers amounted to joint action.

239. The joint action between DR. CHYORNY and the above referenced correctional officers occurred through specific written documents written by DR. CHYORNY to be read by the correctional officers whereby DR. CHYORNY told the officers to engage in pain compliance techniques to get SHANE to walk and to not accommodate SHANE'S paralysis by providing him wheelchair access.  The communications occurred shortly prior to, during and after April, 2014, but clearly began after SHANE suffered an epileptic seizure, on or around March, 28, 2014.

WHEREFORE, PLAINTIFF demands compensatory damages, punitive damages, costs and attorney fees against the DEFENDANTS and whatever additional relief this Court deems equitable and just.

## COUNT VI
### (Battery)

240. PLAINTIFF pleads and incorporates the allegations set forth in paragraphs 1-176 of the Complaint as if specifically set forth therein.

241. DEFENDANT OFFICERS MATTHEW TRACY, J. JENSEN, DURAN, J. CHACON, TEJEDA, ANTHONY DIAZ, T. GONZALES, EUGENE

27

TOBOLA, VASQUEZ, TEMPRA, PEARCE, CHETCUTI, DIAS, GRANT, FLORES, CORTES, REYES, NEEDHAM, OFFICER VALLEJO and MADRIZ willful and intentional conduct described herein, including, but not limited to, inflicting physical punishment upon SHANE and battering SHANE violates the law of the State of California.

242. As a direct result of DEFENDANTS' conduct as described herein, SHANE sustained actual damages including injuries to his person, pain, severe and grievous mental and emotional suffering, humiliation, shame, embarrassment, worry, fear, anguish, shock, nervousness, and anxiety.

WHEREFORE, PLAINTIFF demands compensatory and punitive damages and costs from the DEFENDANTS whatever additional relief this Court deems equitable and just.

## COUNT VII
### (Violation of the Americans with Disabilities Act)

243. PLAINTIFF pleads and incorporates the allegations set forth in paragraphs 1-176 of the Complaint as if specifically set forth therein.

244. DEFENDANT OFFICERS MATTHEW TRACY, J. JENSEN, DURAN, J. CHACON, TEJEDA, ANTHONY DIAZ, T. GONZALES, EUGENE TOBOLA, VASQUEZ, TEMPRA, PEARCE, CHETCUTI, DIAS, GRANT, FLORES, CORTES, REYES, NEEDHAM, OFFICER VALLEJO and MADRIZ conduct violated the ADA Civil Rights Act and Section 504 of the Rehabilitation Act of 1973 causing SHANE to suffer physically and emotionally.

WHEREFORE, PLAINTIFF demands compensatory damages punitive damages, costs and attorney fees against the DEFENDANTS and whatever additional relief this Court deems equitable and just.

## COUNT VI
## (Negligence)

245.  PLAINTIFF pleads and incorporates the allegations set forth in paragraphs 1-176 of the Complaint as if specifically set forth therein.

246.  DEFENDANT OFFICERS MATTHEW TRACY, J. JENSEN, DURAN, J. CHACON, TEJEDA, ANTHONY DIAZ, T. GONZALES, EUGENE TOBOLA, VASQUEZ, TEMPRA, PEARCE, CHETCUTI, DIAS, GRANT, FLORES, CORTES, REYES, NEEDHAM, OFFICER VALLEJO and MADRIZ had a duty to SHANE to prevent foreseeable risks to foreseeable people, including the SHANE. DEFENDANTS failed to provide reasonable medical care pursuant to California Government Code § 845.6 for prisoners and further negligent violations of §815.2 regarding injuries by an employee within the scope of employment which acts were not discretionary and against individual Defendants in violation of California Government Codes § 855.8 and § 856.

247.  Defendants having personal knowledge and reason to know that SHANE required immediate medical care and reasonable accommodation for his disability had a duty to SHANE pursuant to California Government Code § 845.6 to provide immediate medical care and reasonable accommodation for his disability to SHANE.

248.  Defendants breached their duty.

29

249.   Defendants' conduct as described above is also in violation of California Government Code § 845.6, for depriving SHANE of immediate medical care and reasonable accommodation for his disability despite Defendants' having personal knowledge and reason to know SHANE required immediate medical care and reasonable accommodation. Defendants' failure to reasonably provide said care and accommodation resulted in SHANE 'S serious and permanent physical injuries and SHANE'S emotional distress.

250.   As a direct and proximate result of the acts and omissions of the Defendants, and each of them, SHANE has suffered emotional and physical damages.

WHEREFORE, PLAINTIFF demands compensatory damages and costs from the DEFENDANTS whatever additional relief this Court deems equitable and just.

### COUNT VIII
### (Intentional Infliction of Emotional Distress)

251.   PLAINTIFF pleads and incorporates the allegations set forth in paragraphs 1-176 of the Complaint as if specifically set forth therein.

252. DEFENDANT OFFICERS MATTHEW TRACY, J. JENSEN, DURAN, J. CHACON, TEJEDA, ANTHONY DIAZ, T. GONZALES, EUGENE TOBOLA, VASQUEZ, TEMPRA, PEARCE, CHETCUTI, DIAS, GRANT, FLORES, CORTES, REYES, NEEDHAM, OFFICER VALLEJO and MADRIZ conduct as described herein was extreme and outrageous such as to shock the conscience and to exceed that usually tolerated in a civilized community.

30

253. These DEFENDANTS intended to cause SHANE severe emotional distress or acted with reckless disregard of the probability that SHANE would suffer severe emotional distress.

254. DEFENDANTS' conduct was a substantial factor in causing PLAINTIFFS severe emotional distress.

**COUNT IX**
**Monell Claim**

255. The actions of the SHERIFF and the COUNTY OF SANTA CLARA proximately caused the injuries sustained by SHANE through deliberate indifference.

256. The SHERIFF and the COUNTY OF SANTA CLARA are final policy makers and otherwise in charge of the conduct at the Santa Clara County Jail.

WHEREFORE, PLAINTIFF demands compensatory damages and costs and attorney fees from THE SANTA CLARA COUNTY SHERIFF and the COUNTY OF SANTA CLARA and whatever additional relief this Court deems equitable and just.


Respectfully Submitted

_s/ Blake Horwitz_
Attorneys for Plaintiffs
The Blake Horwitz Law Firm, Ltd.

Blake Horwitz, Esq.
111 W. Washington St., Ste 1611
Chicago, Illinois 60602
Telephone: (312) 676-2100
Fax: (312) 445-8741