ORRY P. KORB, County Counsel (S.B. #114399)
STEPHEN H. SCHMID, Deputy County Counsel (S.B. #078055)
OFFICE OF THE COUNTY COUNSEL
70 West Hedding Street, East Wing, Ninth Floor
San Jose, California 95110-1770
Telephone: (408) 299-5900
Facsimile: (408) 292-7240

Attorneys for Defendants
COUNTY OF SANTA CLARA (Incorrectly Sued
as Santa Clara County Sheriff's Office, Santa Clara
County Jail, and Santa Clara County Valley
Medical Center); SHERIFF LAURIE SMITH; DR.
ALEXANDER CHYORNY; CHERYL A.
STEVENS; and SERGEANT J. JENSEN

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
(San Jose)

| | |
|---|---|
| SHANE D. MILLER,<br><br>　　　　Plaintiff,<br><br>v.<br><br>COUNTY OF SANTA CLARA et al.,<br><br>　　　　Defendants. | No. 15-CV-03113EJD<br><br>**DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS SECOND AMENDED COMPLAINT AND FOR AN ORDER DIRECTING A MORE DEFINITE STATEMENT [FRCP RULE 12]**<br><br>Date:　　September 8, 2016<br>Time:　　9:00 a.m.<br>Crtrm.:　4, 5th Floor<br>Judge:　Edward J. Davila |

**TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on **September 8, 2016**, at **9:00 a.m.**, or as soon thereafter as the matter may be heard, in **Courtroom 4, 5th Floor** of the United States District Court, located at 280 South First Street, San Jose, California, Defendants County of Santa Clara (incorrectly Sued As Santa Clara County Sheriff's) County of Santa Clara (incorrectly Sued As Santa Clara County Sheriff's Department, Santa Clara County Jail, And Santa Clara County Valley Medical Center); Sheriff Laurie Smith; Dr. Alexander Chyorny; Cheryl A. Stevens; and Sergeant J. Jensen will move the Court pursuant to Federal Rule of Civil Procedure 12(b)(6) and 12(e) for an order dismissing Plaintiff Miller's Second Amended Complaint and for a more definite statement.

1

This motion is based upon this Notice, the Memorandum of Points and Authorities filed herewith, files and pleadings in this action and, on such other matter as the Court may deem necessary and proper.

Dated: May 3, 2016

Respectfully submitted,

ORRY P. KORB
COUNTY COUNSEL

By: /S/
STEPHEN H. SCHMID
Deputy County Counsel

Attorneys for Defendants
COUNTY OF SANTA CLARA (Incorrectly Sued as Santa Clara County Sheriff's Office, Santa Clara County Jail, and Santa Clara County Valley Medical Center); SHERIFF LAURIE SMITH; DR. ALEXANDER CHYORNY; CHERYL A. STEVENS; and SERGEANT J. JENSEN

## I.
## INTRODUCTION

Defendants County of Santa Clara, Santa Clara County Sheriff Laurie Smith, Dr. Alexander Chyorny, Cheryl Stevens, and Sergeant J. Jensen hereby move for dismissal and for a more definite statement under FRCP Rules 12(b)(6) and 12(e).

Count V of the Second Amended Complaint (SAC), which claims violations of the Sixth and First Amendment, and Count VII, which claims violation of the Americans with Disabilities Act, fail to allege facts sufficient to state legally-valid claims and should be dismissed with prejudice.

Because the SAC fails to state a cause of action upon any theory against Defendant Cheryl Stevens, Stevens should be dismissed from the case with prejudice.

Also, the SAC complaint contains two duplicative state tort claims based upon battery (Count II and Count VI) and an additional Count VI (for Negligence). These errors in the pleading are confusing and prevent Defendants from responding separately to each count.

Further, the SAC alleges eight separate jail incidents, each of which supports a separate cause of action for personal injury under California law. Each incident is independently subject to the claim presentation requirements of the California Government Code. But instead of pleading each incident separately, the SAC includes them in its general allegations and then incorporates them by reference in the state tort law counts – making it impossible to separate the incidents for which Miller failed to comply with claim presentation requirements from those for which he did.

Defendants seek an order for a more definite statement directing Miller to re-organize his pleading to afford adequate opportunity to respond separately to individual causes of action, or counts, associated with each incident; and to correct the duplicative pleading described above.

## II.
## PROCEDURAL FACTS

Plaintiff Miller recently filed a motion for leave to file his SAC while Defendants' motion to dismiss was pending. The proposed SAC corrected a defect associated with a real party in interest issue by substituting Shane Miller for his mother, Cindy Miller, as Plaintiff. This Court granted Miller's motion on April 19, 2016 and he filed the SAC the same day. Every time Miller files an

amended pleading, new Defendants and new incidents are added. The SAC adds seven new individual Defendants – bringing the total individual Defendants to 29 – and adds allegations regarding an "April 1, 2014 Pepper Spray Incident" implicating the new individual Defendants.[1] (SAC, ¶¶ 105-126.)

## III.

## ARGUMENT

### A. LEGAL STANDARD FOR MOTION TO DISMISS

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) is a challenge to the sufficiency of the allegations in the complaint. Dismissal under Rule 12(b)(6) is proper where there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balisteri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990).

To survive a Rule 12(b)(6) motion, the plaintiff must allege "enough facts to state a claim for relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 556).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal citations omitted). Thus, "bare assertions . . . amount[ing] to nothing more than a formulaic recitation of the elements . . . are not entitled to be assumed true." *Iqbal*, 129 S.Ct. at 1951. A court is "free to ignore legal conclusions, unsupported conclusions, unwarranted inferences and sweeping legal conclusions cast in the form of

---

[1] Because the seven new individual Defendants have not been served in this action, which was commenced in July 2015, this motion is brought on behalf of only those Defendants who have appeared in the action to date.

2
Defendants' Motion to Dismiss Second Amended Complaint   15-CV-03113EJD

factual allegations." *Farm Credit Services, v. American State Bank*, 339 F.3d 764, 767 (8th Cir. 2003) (citation omitted).

**B. COUNT V FAILS TO ALLEGE SUFFICIENT FACTS TO STATE A LEGALLY VALID CLAIM FOR VIOLATION OF THE SIXTH AND FIRST AMENDMENT**

Count V alleges that Miller was denied his right to counsel and his right to speech when Defendants refused his request for a wheelchair to facilitate meetings with his attorney. (SAC, ¶¶ 235-239.) To support his claim under Section 1983, Miller alleges violation of his rights under the First and Sixth Amendments. The First Amendment states:

> Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances.

To survive a Rule 12(b)(6) motion, the plaintiff must allege "enough facts to state a claim for relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Because Miller failed to allege any facts showing a connection between frustration of visits with his attorney and violation of his First Amendment rights (e.g., free speech, free exercise of religion, the right to petition the Government for a redress of grievances), no actionable civil rights claim for a First Amendment violation is apparent.

The Sixth Amendment states:

> In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the Assistance of Counsel for his defense.

As the Sixth Amendment expressly provides, the right to counsel applies to an accused defending against criminal charges. In other words, the Sixth Amendment right to counsel does not extend to an individual prosecuting or defending a civil action. Assuming the attorney mentioned in Miller's allegations was defending him in criminal proceedings, there is no violation of his constitutional right to counsel because he had a lawyer to assist him. Thus, the focus of Count V should be on the constitutional implication of being denied one or more visits with his attorney.

The Ninth Circuit analyzes constitutional issues regarding an inmate's visits with his attorney under the Fourteenth Amendment. *Ching v. Lewis,* 895 F. 2d 608 (9th Cir. 1990). *Ching* found that the Fourteenth Amendment guarantees prisoners meaningful access to the courts and that the opportunity to communicate privately with an attorney is an important part of that access. *Ching,* 895 F. 2d at 609. But while inmate-attorney contact visits are protected under the Fourteenth Amendment, a claimant must allege an "actual injury" to court access, consisting of some specific instance in which an inmate was actually denied access to the courts in order to state a claim for relief under Section 1983. *Sands v. Lewis,* 886 F. 2d 1166, 1171 (9th Cir. 1989); *Keenan v. Hall,* 83 F. 3d 1083, 1094 (9th Cir. 1996).

Miller fails to link any allegedly limited contact with his attorney with actual harm; actual consequences in terms of his defense in criminal proceedings against him. Thus, under *Sands,* Count V should be dismissed for failure to allege any actual harm to Miller's criminal defense flowing from deprivation of contact visits with his attorney.

As a practical matter, Miller cannot cure this defect by amendment. No allegations in the SAC indicate that his criminal defense was compromised; i.e., that he lost a motion or trial proceeding due to being deprived of contact with his attorney. Nor are there any allegations that such deprivation hampered him materially in any motion hearing or trial proceeding. No harm is alleged, nor damages sought, in the SAC as to any specific event connected to criminal proceedings against Miller. Thus, the Court should dismiss Count V with prejudice.

### C. THE SAC FAILS TO ALLEGE SUFFICIENT FACTS TO SUPPORT A CLAIM AGAINST DEFENDANT CHERYL STEVENS

Miller alleges that Defendant Cheryl Stevens is and was a Santa Clara County counsel. (SAC, ¶ 77.) Miller further alleges that "on the afternoon of July 17, 2014, Shane (Miller)'s counsel sent a letter via email transmission to Santa Clara County Counsel Cheryl A. Stevens requesting that Shane be provided with wheelchair assistance to access counsel and attend hearings for the defense of a criminal action lodged against Shane." (SAC, ¶ 143.) Finally, Miller alleges that from March 2014 to August 2014, he was prevented many times from seeing his counsel. Miller's attorney communicated with, among others, Ms. Stevens to try to facilitate Miller's wheelchair access to his

counsel, but these attempts went unresolved and Miller was allegedly prevented from speaking to his counsel. (SAC, ¶ 237.) No other allegations in the SAC mention Ms. Stevens.

As discussed above, Miller fails to state a legally valid claim in Count V based upon alleged interference with his attorney visits. Miller's allegations against Stevens appear tied to Count V but fail to articulate specific actions by her that deprived him of contact with his attorney. To survive a Rule 12(b)(6) motion, the plaintiff must allege "enough facts to state a claim for relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009).

Ms. Stevens should be dismissed with prejudice because (1) Count V does not state a claim; (2) Count V does not allege any actionable wrongdoing by Stevens, and (3) no other Count in the SAC states a claim against Stevens.

**D. MILLER FAILS TO ALLEGE SUFFICIENT FACTS TO SUPPORT A CLAIM FOR RELIEF FOR VIOLATION OF THE AMERICANS WITH DISABILITIES ACT (COUNT VII)**

Title II of the ADA prohibits a public entity from discriminating against a qualified individual with a disability on the basis of that disability. 42 U.S.C. § 12132; *Weinreich v. L.A. County Metro. Transp. Auth.*, 114 F.3d 976, 978 (9th Cir. 1997). To state a claim of disability discrimination under Title II, a plaintiff must allege four elements: (1) the plaintiff is a qualified individual with a disability; (2) the plaintiff is otherwise qualified to participate in or receive the benefit of some public entity's services, programs, or activities; (3) the plaintiff was either excluded from participation in or denied the benefits of the public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (4) such exclusion, denial of benefits, or discrimination was by reason of the plaintiff's disability. *Id.*

In Count VII, Miller fails to adequately plead the first element, "disability." The ADA defines "disability" as: (A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of the impairment; or (C) being regarded as having the impairment. 42 U.S.C. § 12102(1). The phrase "physical or mental impairment" means

"any mental or psychological disorder" including "emotional or mental illness." 28 C.F.R. § 35.104. The phrase "a record of such an impairment" means having "history of . . . mental or physical impairment that substantially limits one or more major life activities." *Id.* To allege a record of having a mental impairment that substantially limits one or more major life activities under 42 U.S.C. § 12102(1)(B), a plaintiff must allege with at least some factual detail what the record of impairment is. *Thompson v. Davis*, 295 F.3d 890, 896 (9th Cir. 2002) (plaintiffs sufficiently alleged that they had a "record" of physical or mental impairment by alleging that they were addicted to drugs in the past, that they had been rehabilitated, and that they no longer used drugs).

An individual shall not be regarded as having an impairment that substantially limits one or more major life activities if the impairment is transitory and minor. 42 U.S.C. § 12102(2)(B). A transitory impairment has an actual or expected duration of six months or less. *Id.* Federal regulations define "substantially limits" as "[u]nable to perform a major life activity that the average person in the general population can perform," or being "[s]ignificantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity" as compared to the average person. *E.E.O.C. v. United Parcel Serv., Inc.*, 306 F.3d 794, 801 (9th Cir. 2002) (citing 29 C.F.R. § 1630.2(j)(1)(i)-(ii)).

In deciding whether a disability "substantially limits" a "major life activity," relevant factors "that should be considered include '[t]he nature and severity of the impairment; [t]he duration or expected duration of the impairment; and [t]he permanent or long-term impact, or the expected permanent or long-term impact of or resulting from the impairment.'" *Id.* (quoting 29 C.F.R. § 1630(j)(2)(i)-(iii)).

The ADA "defines 'disability' with specificity as a term of art. Hence, a person may be 'disabled' in the ordinary usage sense, or even for purposes of receiving disability benefits from the government, yet still not be 'disabled' under the ADA." *Sanders v. Arneson Products, Inc.*, 91 F.3d 1351, 1354 (9th Cir. 1996). When plaintiffs allege that they are disabled within the meaning of the ADA, courts have required them to plead their disabilities with some factual specificity. *O'Guinn v. Lovelock Corr. Ctr.*, 502 F.3d 1056, 1058 (9th Cir. 2007) (plaintiff adequately alleged that he was disabled where he pled that he suffered from mental illness including "brain damage, and organic

personality disorder"). To survive a motion to dismiss an ADA claim, the plaintiff "must state facts to show that a claim to relief is plausible on its face." *Kittleson v. Sears, Roebuck & Co.*, No. CV 10-00106 DAE BMK, 2010 WL 2485935, at *3 (D. Haw. June 15, 2010).

Count VII alleges that conduct of officers violated the ADA Civil Rights Act and Section 504 of the Rehabilitation Act of 1973, causing Miller to suffer physically and emotionally. (SAC, ¶ 244.) Miller further alleges that he "suffers from a profound medical condition making his arms and legs paralyzed rendering him unable to bring this action on his own behalf" and has a "serious neurological disorder commonly referred to as epilepsy," which was diagnosed on February 13, 1978. (SAC, ¶¶ 5, 86, and 87.) However, Miller fails to identify the medical condition causing his alleged paralysis or allege any connection between his alleged epilepsy, diagnosed 38 years ago, and his alleged paralysis.

Epilepsy is a term used to describe any of various disorders marked by abnormal electrical discharges in the brain and typically manifested by sudden brief episodes of altered or diminished consciousness, involuntary movements, or convulsions. (Merriam-Webster Collegiate Dictionary, Eleventh Edition, page 420.) Paralysis is a term used to describe a complete or partial loss of function especially involving the power of motion or of sensation in any part of the body. (Merriam-Webster Collegiate Dictionary, Eleventh Edition, page 899.) Miller fails to allege how his epileptic condition qualifies as a "disability" under the ADA, which requires a showing of a physical or mental impairment that substantially limits one or more major life activities.

The most that can be inferred from the SAC is that Miller's alleged problems began in the jail when he had an epileptic seizure in March 2013. (SAC, ¶¶ 86-95.) But he fails to explain how an alleged seizure led to a medical condition involving paralysis of sufficient duration and severity to qualify as a "disability" under the ADA. Instead, Miller resorts to suspiciously vague and conclusory verbiage, begging the reader to assume that an epileptic seizure leads to paralysis, which is unfounded. Vague and conclusory allegations that the ADA's statutory requirements are satisfied "are insufficient to survive a motion to dismiss." *Ovitsky v. Oregon*, No. 3:12-CV-02250-AA, 2013 WL 4505832, at *4 (D. Or. Aug. 20, 2013).

/ /

Where, as here, a plaintiff's allegations "do not illuminate the nature, severity, duration and impact of [the plaintiff's] disability," such allegations are insufficient to "suggest that [the plaintiff] is substantially impaired by [the] purported disability." *Rodriguez v. John Muir Med. Ctr.*, No. C 09-0731 CW, 2010 WL 1002641, at *2 (N.D. Cal. Mar. 19, 2010) (dismissing with leave to amend allegation that plaintiff "had a disability involving her back" which impacted major life activities such as lifting, "because even though 'lifting' qualified as a major life activity under the ADA, plaintiff failed to allege sufficient facts to imply she was 'substantially impaired'").

In summary, Miller fails to adequately allege that the correctional officers' actions violated the ADA because he has not adequately pled a "disability" under the ADA. Merely mentioning epilepsy and paralysis without linking the two or otherwise explaining the basis of his alleged paralysis does not satisfy Miller's pleading obligations. Thus, Count VII alleging violation of the ADA should be dismissed without leave to amend.

### E. A MORE DEFINITE STATEMENT IS NECESSARY TO CURE SAC DEFICIENCIES

If a pleading is so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading, the party may move for a more definite statement before interposing a responsive pleading. FRCP, Rule 12(e). The motion shall point out the defects complained of and the details desired. *Id.* The proper test in evaluating a motion under Rule 12(e) is whether the complaint provides the defendant with a sufficient basis to frame his responsive pleadings. *Federal Sav. and Loan Ins. Corp. v. Musacchio,* 695 F. Supp. 1053, 1060 (N.D. Cal. 1988).

Miller's SAC contains two separate but nearly identical counts for battery, Count II (SAC, page 23) and Count VI (SAC, page 29). To compound the confusion, there is another (second) Count VI based upon negligence (SAC, page 29). These defects promote confusion and make it difficult for Defendants to respond to the individual counts. By contrast, it is simple for Miller to remedy them by further amendment.

Another problem arises because Miller alleges eight separate jail incidents in the general allegations of the SAC even though each incident constitutes a separate injury under state tort law. Under California law, tort actions for money damages against public entities and public employees

must allege facts demonstrating either compliance with the Government Tort Claims Act – a claim presentation requirement – or an excuse for noncompliance as an essential element of the cause of action. *State of California v. Superior Court (Bodde),* 32 Cal. 4th 1234, 1243-44 (Cal. 2004).

Miller alleges that he complied with the notice requirements of the Tort Claims Act. (See SAC, ¶ 212.) But the SAC does not link this general allegation to each individual jail incident such that Defendants can respond separately as to whether Miller complied with, or was excused from, the California Government Code's claim presentation requirements.

This circumstance fosters confusion and hinders the ability of the parties and this Court to assess the viability of causes of action arising out of each jail incident. The confusion can be easily eliminated if Miller is ordered to re-organize his state tort claim allegations as separate counts for each of the eight separate incidents.

Defendants request that Miller be ordered to modify his pleading to remove one of the battery counts, properly renumber the two Count V claims, and re-organize his state law claims into eight separate counts so the legal viability of claims based upon each jail incident can dealt with adequately.

## IV.
## CONCLUSION

The Court should dismiss Count V and Count VII of the SAC with prejudice; dismiss Defendant Stevens with prejudice; and order Miller to amend the remainder of his pleading to make it more definite as fully explained above.

Dated: May 3, 2016　　　　　　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　　　　　ORRY P. KORB
　　　　　　　　　　　　　　　　　　　　　　COUNTY COUNSEL

　　　　　　　　　　　　　　　　　　　By:　　　　/S/
　　　　　　　　　　　　　　　　　　　　　　STEPHEN H. SCHMID
　　　　　　　　　　　　　　　　　　　　　　Deputy County Counsel

　　　　　　　　　　　　　　　　　　　　　　Attorneys for Defendants

1311434